No objections to the Report and Recommendation (the "R&R") dated August 6, 2026, (ECF No. 18), have been received, and accordingly the Court reviews it for clear error. Finding no error, clear or otherwise, the R&R is adopted as the decision of Court. For the reasons stated therein, Plaintiff's motion for judgment on the pleadings is denied. Defendant's request to affirm the decision of the Commissioner is granted. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 13), and close the case.

SO ORDERED.

Cathy Seibel
CATHY SEIBEL, U.S.D.J.

8/24/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

DAVID J. O.,

Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

--------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

25 Civ. 3486 (CS)(JCM)

To the Honorable Cathy Seibel, United States District Judge:

Plaintiff David J. O.[1] ("Plaintiff") commenced this action on April 28, 2025, pursuant to 42 U.S.C. § 405(g), challenging the decision of the Commissioner of Social Security (the "Commissioner"), which denied Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). (Docket No. 1). Presently before the Court are (1) Plaintiff's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Motion"), (Docket No. 13), accompanied by a memorandum of law, (Docket No. 14) ("Pl. Br."); (2) the Commissioner's opposition to Plaintiff's Motion, (Docket No. 16) ("Comm'r Br."); and (3) Plaintiff's reply, (Docket No. 17) ("Pl. Reply"). For the reasons set forth herein, the Court respectfully recommends that Plaintiff's Motion be denied.

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I. BACKGROUND

Plaintiff was born on November 25, 1979. (R.[2] 31). He applied for SSI on August 12, 2020, alleging a disability onset date of April 1, 2019. (R. 10, 666-67). Plaintiff's claim was initially denied on December 20, 2020, and again upon reconsideration on March 31, 2021. (R. 10). On April 9, 2021, Plaintiff filed a written request for an administrative hearing to review the denial of his claim. (*Id.*). Administrative Law Judge Mark Solomon ("ALJ Solomon" or the "ALJ") held a hearing on July 14, 2021. (R. 10, 30-55). On August 17, 2021, ALJ Solomon issued a written decision finding Plaintiff not disabled, and thus, not entitled to SSI. (R. 21). Plaintiff requested review by the Appeals Council, which was denied on August 29, 2022. (R. 1-6). On October 26, 2022, Plaintiff filed a complaint in the United States District Court for the Eastern District of New York challenging this decision. (Pl. Br. at 3). The parties subsequently agreed to remand for further administrative proceedings. (R. 690-91).

On July 28, 2023, the Appeals Council issued an order remanding the case to an ALJ. (R. 750-55). ALJ Solomon held a second hearing on January 16, 2024. (R. 695-712). On February 28, 2024, ALJ Solomon again found Plaintiff not disabled, and therefore not entitled to SSI. (R. 663-85). On March 19, 2024, Plaintiff requested review of this decision by the Appeals Council. (R. 879-85). On February 28, 2025, the Appeals Council denied Plaintiff's request, (R. 657-59), making the ALJ's decision ripe for review.

[2] Refers to the certified administrative record of proceedings relating to Plaintiff's application for social security benefits, filed in this action on June 30, 2025. (Docket No. 9). All page number citations to the certified administrative record refer to the page number assigned by the Social Security Administration.

**A. Medical Evidence**[3]

**1. Relevant Medical Evidence**

Plaintiff has provided a summary of the relevant medical evidence in the record. (*See* Pl. Br. at 4-9). The Commissioner "adopt[ed] Plaintiff's recitation of the relevant facts and underlying proceedings contained in [his brief] with the exception of any inferences, arguments, or conclusions asserted therein," and provided additional relevant facts. (Comm'r Br. at 7). The Court adopts Plaintiff's summary of the medical evidence, as supplemented by the Commissioner's summary, as accurate and complete for the purposes of the issues raised in this action. The Court will also summarize the medical evidence pertinent to the adjudication of this case, as well as findings from certain treating providers and state examiners.

**2. Treatment Through the Acacia Network**

Plaintiff received all of his mental health treatment through the Acacia Network. (Pl. Br. at 4). Plaintiff was evaluated by several nurse practitioners and licensed therapists between 2019 and 2023. (*See generally* R. 951-1519).[4] On August 19, 2020, Maria Toloza, N.P., treated Plaintiff for complaints of hearing "voices," elevated stress levels, and headaches. (R. 649). N.P. Toloza indicated that Plaintiff appeared "generally normal," was in stable condition, and was hearing "less voices" since his last visit. (R. 649-50). N.P. Toloza diagnosed Plaintiff with post-traumatic stress disorder ("PTSD"), psychosis, opioid dependence, bereavement, and major

[3] Plaintiff challenges the ALJ's findings only regarding his mental impairments. Therefore, this Report and Recommendation only addresses Plaintiff's mental impairments. (*See* Pl. Br. at 4 n.5 ("Because [Plaintiff] does not dispute the ALJ's findings regarding the severity of his physical impairments, the following summary focuses on Plaintiff's mental impairments"); *see also* Comm'r Br. at 8 n.5 ("Plaintiff makes no arguments relevant to his physical functioning[.]")).

[4] Although the parties do not address any of Plaintiff's substance abuse related issues, the record contains substance abuse treatment records from 2019. (*See generally* R. 1359-1452). Those records show that throughout 2019, Plaintiff regularly met with Gary Whyte, C.A.S.A.C., for individual psychotherapy sessions. (*Id.*). During those sessions, Plaintiff generally presented as coherent, alert, and receptive, and Plaintiff often reported that he was actively seeking employment. (*See, e.g.*, R. 1374, 1397, 1452).

depressive disorder, and prescribed Plaintiff with sertraline, Risperdal, ibuprofen, and Ambien to treat his conditions. (R. 652-53). On August 21, 2020, Plaintiff met with Joanna Mendez, L.C.S.W., for psychotherapy to identify coping strategies to address his mental health problems, and reduce stressors to improve overall mood, behavior, and functioning. (R. 646). L.C.S.W. Mendez noted that Plaintiff "reported and appears to show minimal improvement in overall mood and stability . . . [but he] agreed to continue using coping strategies for practice to address thinking patterns that adversely affect mood, functioning and behavior." (*Id.*).

Plaintiff's condition remained relatively stable through early 2021. (Pl. Br. at 5). On April 8, 2021, N.P. Toloza examined Plaintiff again, and reported that Plaintiff was "missing appointments . . . [went to] the hospital for non commanding [auditory hallucinations]," and noted Plaintiff stated that he felt better although he was still hearing voices "on and off." (R. 586). N.P. Toloza opined that Plaintiff had major depressive disorder and prescribed Zyprexa, sertraline, and Ambien. (R. 590). On April 20, 2021, Plaintiff attended a psychotherapy session with Jacqueline Melgoza, M.S.W. (R. 575). During the session, Plaintiff was "irritable and depressed" and M.S.W. Melgoza had to stop the assessment early because Plaintiff was "unable to give straight answers to questions as he was sleeping off and on throughout." (R. 576). Plaintiff's PHQ-9 score was 19, indicating moderately severe depression. (*Id.*). M.S.W. Melgoza recommended psychotropic medication and continued psychotherapy so that Plaintiff could identify coping skills to improve mood, behavior, and functioning. (R. 585).

Between May 2021 and April 2023, Plaintiff's mental health symptoms fluctuated. On May 26, 2021, N.P. Toloza reported that Plaintiff went to the hospital due to auditory hallucinations, (R. 564), but was deemed to be "stable" a month later on June 30, 2021, (R. 553). On September 27, 2021, Plaintiff had a psychotherapy session with Eileen Molina, L.M.S.W.,

who diagnosed Plaintiff with opioid dependence and recommended that Plaintiff engage in long-term psychotherapy sessions. (R. 1230-31). Plaintiff met with L.M.S.W. Molina again on October 15, 2021, and Plaintiff reported that he was taking his medication and feeling better, and further "disclosed that . . . he has a job orientation to begin work." (R. 1219). On May 3, 2022, L.M.S.W Molina indicated that Plaintiff's behavior suggested "a moderate degree of emotional distress and difficulty dealing with relationships, work and/or school life." (R. 1144). Then on July 12, 2022, N.P. Olawande Awopetu noted that Plaintiff was "stable on current regimen, denie[d] side effects, report[ed] good outcome with current med[ications]" and exhibited "less anxiety/depression and [was] able to regulate emotions in a positive way." (R. 1108). On October 27, 2022, N.P. Awopetu reported that Plaintiff was coherent, did not have suicidal or homicidal ideation, was alert and oriented, and did not have any auditory or visual hallucinations. (R. 1067). Plaintiff's overall mental health was reported as stable or normal on November 23, 2022, (R. 1060), and once again on April 5, 2023, (R. 1006).

**3. Dr. Eleanor Murphy, Ph.D. – SSA Consultative Psychologist**

On December 1, 2020, Dr. Eleanor Murphy, Ph.D., performed a psychiatric evaluation on Plaintiff. (R. 460). Plaintiff complained about weight gain, difficulty falling asleep, sad moods, anxiety, irritability, difficulty concentrating, and muscle tension. (R. 460-61). Plaintiff also reported "that in the past he sometime[s] heard voices" but that was "well controlled by his medication." (R. 461). Plaintiff denied having a history of, or being treated for, drug or alcohol abuse. (*Id.*). Plaintiff further reported that he was able to dress, bathe, and groom himself at least

once a week, but that he relied on his living facility staff to help with laundry, shopping, cleaning, food preparation, and money management. (R. 463).

Dr. Murphy found that Plaintiff was well groomed, cooperative, spoke coherently, there was no evidence of hallucinations, delusions, or paranoia, but also described Plaintiff's affect as "depressed." (R. 461). Dr. Murphy diagnosed Plaintiff with a developmental and learning disorder, PTSD, generalized anxiety disorder, and major depressive disorder, with psychotic features that were in partial remission. (R. 462). Dr. Murphy noted that Plaintiff's cognitive intellectual functioning was borderline to below average, and that he will need "assistance to manage funds due to his cognitive limitation and current living status." (R. 464).

**4. Dr. S. Bhutwala, Ph.D.**

S. Bhutwala, Ph.D., conducted a Mental Residual Functional Capacity ("MRFC") assessment of Plaintiff on December 14, 2020. (R. 104-08). Dr. Bhutwala determined that Plaintiff was "not significantly limited" in his ability to: remember locations and work-like procedures; understand, remember, make, and carry out very short and simple instructions or request assistance; interact appropriately with the general public; get along with coworkers and peers; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; travel in unfamiliar places or use public transportation; set realistic goals or make plans independently; be aware of normal hazards and take appropriate precautions; or respond appropriately to changes in the work setting. (R. 104-07). Dr. Bhutwala also found that Plaintiff was "moderately limited" in his ability to: understand and remember detailed instructions; maintain attention for extended periods; perform activities within a schedule, and maintain regular attendance; and complete a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.*). Dr. Bhutwala ultimately

concluded that Plaintiff was "limited" to the ability to perform the four basic mental demands of unskilled work. (R. 108).

**5. Dr. O. Fassler**

O. Fassler, Ph.D., conducted an additional MRFC assessment of Plaintiff on March 25, 2021. (R. 128-32). Dr. Fassler determined that Plaintiff was "not significantly limited" in his ability: to understand, carry out, make, or remember very short and simple instructions; to interact appropriately with the general public; to ask simple questions or for assistance; to follow instructions or receive criticism from supervisors; to get along with coworkers without distracting them, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to respond appropriately to instructions and criticism from supervisors; to travel in unfamiliar places or use public transportation; to set realistic goals or make plans independently of others; to be aware of normal hazards and take appropriate precautions; or to respond appropriately to changes in the work setting. (R. 128-31). Dr. Fassler also concluded that Plaintiff was "moderately limited" in his ability to: remember detailed instructions, maintain attention for extended periods; to perform activities within a schedule with regular attendance; and to complete a normal workday and workweek without interruptions from psychologically based symptoms. (R. 128-30). Accordingly, Dr. Fassler concurred with Dr. Bhutwala's conclusion that Plaintiff was "limited" to the ability to perform the four basic mental demands of unskilled work. (R. 132).

**B. Nonmedical Evidence**

**1. Plaintiff's Testimony**

On July 14, 2021, Plaintiff appeared for a hearing before ALJ Solomon. (R. 31). Plaintiff was represented by counsel during that hearing. (*Id.*). He stated that the highest level of

education he completed was tenth grade. (R. 35). Plaintiff confirmed that he worked a few years ago handing out flyers but did not hold substantial employment any time after 2003. (R. 36). Plaintiff testified that he lives in a single room occupancy facility, (R. 35-36), sometimes does his own laundry and shops by himself, and tries to dress himself. (R. 38-39). He also tries to walk outside for about half an hour on a daily basis. (R. 43). Plaintiff's testimony regarding his mental functioning was limited, but he stated that he is bipolar and depressed and sees a psychiatrist to address these issues. (R. 41). He also said he "forget[s] a lot of things," (R. 44), that his anxiety medication impacts his ability to function properly daily, (*id.*), and that he sleeps about five hours during the day due to his depression, (R. 46-47).

After successfully appealing ALJ Solomon's August 17, 2021 decision finding Plaintiff not disabled, Plaintiff testified a second time before ALJ Solomon on January 16, 2024. (R. 697). At the January 2024 hearing, Plaintiff testified that he took a train to the hearing by himself, (R. 702), that he was living alone in an apartment for 6 months, (R. 701), that he can "sometimes" dress and bathe himself but he still needs help to shop, (R. 701-02), and that he takes psychiatric medications, (R. 702). Plaintiff also denied any drug use since 2019. (R. 700-01). When asked about treatment records showing a positive opioid screen in December 2023, Plaintiff testified that those instances of drug use were caused by his depression. (R. 701). Plaintiff further testified that that he suffers from depression due to the death of his wife and brother, that he does not "care about life no more[,]" that he hears demonic voices telling him to kill himself and hurt others, (R. 704), that he does not like to be around people and has trouble getting along with managers and other employees at his prior jobs, (R. 705), and that he has difficulty concentrating on simple things, such as watching television, (R. 706).

**2. Vocational Expert's Testimony**

Vocational Expert Richard Barry Hall ("VE Hall") testified at Plaintiff's second hearing on January 16, 2024. (R. 706-10). The ALJ posed the following hypothetical to VE Hall:

> Assume a hypothetical [Plaintiff] of the [Plaintiff's] age, education, and work experience. Assume further the hypothetical [Plaintiff] has the ability to [per]form work-related mental and physical activities subject to the following exertional and non-exertional limitations and restrictions of somebody who could sit for six hours, stand or walk for a total of six hours, lift or carry up to 20 pounds occasionally and ten pounds frequently. He can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds. He can occasionally stoop, balance, kneel, crouch, and crawl. He must avoid working at unprotected heights and with hazardous machinery. Can remember, understand, and carry out simple instructions. He can use judgement to make simple work-related decisions. He can adapt to routine and occasional changes in the workplace, and he can have occasional contact with supervisors and coworkers, and no contact with the general public.

(R. 707). ALJ Solomon also asked VE Hall to assume "that lifting and carrying are reduced to ten pounds occasionally and five pounds frequently." (*Id.*).

VE Hall testified that such an individual could work as: a laundry attendant, with the Dictionary of Occupational Titles ("DOT") 361.687-030, light exertion, SVP 2; a mail sorter, DOT 209.687-026, light exertion, SVP 2; or as an order caller, DOT 209.667-014, light exertion, SVP 2. (R. 708.) The ALJ also asked VE Hall to assume the same limitations, except instead of light work, the individual could perform at a sedentary exertion level. (R. 707). VE Hall testified that such an individual could work as: a document preparer, DOT 249.587-018, sedentary exertion, SVP 2; an addresser, DOT 209.587-010, sedentary exertion, SVP 2; or as an assembly line worker, DOT 713.687-018, sedentary exertion, SVP 2. (R. 708). The ALJ then asked VE Hall to assume that the individual could have no contact with supervisors, coworkers, or the general public, was unable to make simple work-related decisions, and could not adapt to routine

and occasional changes in the workplace. (R. 708-09). VE Hall opined that there were no jobs that such an individual could perform. (*Id.*). VE Hall also confirmed that the jobs listed above exist in the national economy and that his testimony was consistent with the DOT and Selected Characteristics of Occupations. (R. 708-10).

**3. ALJ Solomon's Decision**

On February 28, 2024, ALJ Solomon denied Plaintiff's application for SSI. (R. 680). He determined that Plaintiff had not been under a disability within the meaning of the SSA since August 12, 2020. (*Id.*). Applying the five-step procedure for evaluating disability claims, ALJ Solomon evaluated Plaintiff's claims. (R. 667). At step one, he found that Plaintiff had not engaged in substantial gainful activity from August 12, 2020. (R. 668). At step two, ALJ Solomon determined that Plaintiff had the following severe impairments: (1) major depressive disorder, (2) post-traumatic stress disorder, (3) generalized anxiety disorder, (4) schizoaffective disorder, and (5) degenerative disc disease of the lumbar, thoracic, and cervical spine. (*Id.*). He determined that these impairments significantly limited Plaintiff's ability to perform basic work activities. (*Id.*).

At step three, ALJ Solomon found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments set forth in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (R. 669).[5] Specifically, the ALJ determined that "[t]he severity of [Plaintiff's] mental impairments . . . [did] not meet or medically equal" the applicable listing criteria. (R. 670).

[5] For the reasons set forth herein, the Court only addresses the ALJ's determinations regarding Plaintiff's mental impairments. *See supra* n.3.

Specifically, he found that the "paragraph B" criteria were not satisfied. (*Id.*).[6] The ALJ stated that while Dr. Murphy noted Plaintiff "exhibited borderline-to-below average cognitive functioning with impaired attention/concentration and memory skills," mental status examinations documented in progress notes did not reflect similar cognitive deficits. (R. 671). Therefore, the ALJ found that Plaintiff had no more than moderate limitations in remembering or applying information. (*Id.*).

Regarding an individual's ability to interact with others, the ALJ noted that while Plaintiff complained of difficulty getting along with others and suffered from isolative behavior, "mental status examinations documented in progress notes do not reflect behavioral or relational abnormalities beyond depressed mood or flat affect." (*Id.*). ALJ Solomon specifically considered Dr. Murphy's opinion that despite having a depressed affect, Plaintiff "exhibited a cooperative attitude with adequate manner of relating." (*Id.*). Furthermore, the ALJ explained that despite stating that he avoids taking public transportation, Plaintiff "acknowledged the ability to shop in stores and travel independently," and further "stated he gets along with authority figures." (*Id.*). Therefore, ALJ Solomon found that Plaintiff had no more than moderate limitations with respect to interacting with others. (*Id.*).

As for Plaintiff's ability to concentrate, the ALJ found that he had only a moderate limitation despite Plaintiff claiming that he suffered from "memory deficits, concentration deficits, and difficulty understanding," because Plaintiff nonetheless "acknowledged the ability to attend to his personal care, prepare simple meals, wash dishes, travel independently, and shop

[6] "To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning." (R. 670). "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis." (*Id.*). "A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." (*Id.*).

in stores." (*Id.*). ALJ Solomon acknowledged Dr. Murphy's opinion that Plaintiff "exhibited borderline-to-below average cognitive functioning with impaired attention/concentration and memory skills," but stated that "mental status examinations documented in progress notes do not reflect similar cognitive deficits." (*Id.*). Therefore, ALJ Solomon found that Plaintiff has no more than a moderate limitation in concentrating, persisting or maintaining pace. (*Id.*).

The ALJ also found that Plaintiff had a "mild limitation" with respect to adapting or managing oneself. (*Id.*). The ALJ stated that although Plaintiff typically avoids taking public transportation, and cannot manage himself during periods of stress or changes in his routine, he can attend to his personal care, travel independently, and shop. (*Id.*). The ALJ accordingly concluded that because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria [were] not satisfied." (R. 672).

ALJ Solomon further found that Plaintiff did not establish the "paragraph C" criteria, because there was "no evidence that [Plaintiff] suffers from a serious and persistent mental disorder for at least two years, of whose ongoing medical treatment, mental health therapy, psychosocial support, or a highly structured setting was diminishing the symptoms and signs or the mental disorder, and that a marginal adjustment or minimal capacity to adapt to changes in the environment or to demands that are not already part of daily life." (*Id.*). ALJ Solomon noted that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process," and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." (*Id.*). Moreover, the ALJ affirmed that his RFC assessment

reflected "the degree of limitation [he] . . . found in the 'paragraph B' mental function[ing] analysis." (*Id.*).

ALJ Solomon determined that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. § 416.967(b) except with some additional limitations." (*Id.*). Specifically, he found that Plaintiff could "lift/carry up to 20 pounds occasionally and up to 10 pounds frequently, sit up to 6 hours in an eight-hour workday, and stand/walk up to 6 hours in an eight-hour workday." (*Id.*). The ALJ also held that Plaintiff can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but that he can never climb ladders, ropes, or scaffolds. (*Id.*). He also stated that Plaintiff must "avoid working at unprotected height and with hazardous machinery." (*Id.*). Finally, the ALJ determined that Plaintiff could "remember, understand, and carry out simple instructions, use judgment to make simple work-related decisions, adapt to routine and occasional changes in the workplace, have occasional contact with supervisors and coworkers, [but he could] have no contact with the general public." (*Id.*).

In arriving at the RFC, the ALJ examined all of Plaintiff's symptoms and their consistency with the objective medical evidence and other evidence in the record based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p. (*Id.*). He "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 416.920c." (*Id.*). ALJ Solomon followed a "two-step process." (*Id.*). First, the ALJ determined "whether there [was] an underlying medically determinable physical or mental impairment[] ... that could reasonably be expected to produce [Plaintiff's] pain or other symptoms"; and second, upon showing of such an impairment, he "evaluate[d] the intensity, persistency, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities." (R. 672-73).

The ALJ considered Plaintiff's statements regarding his mental health, including that: (1) "he hears voices telling him to kill himself"; (2) "he has had a lot of family deaths recently, causing him depression and he hears demonic voices telling him to kill himself"; (3) he does not "like being around people and that he has difficulty concentrating"; and (4) he has "mood swings, difficulty interacting with others, crowd phobia, panic attacks, difficulty handling stress/changes in routine, and a lack of motivation." (R. 673). ALJ Solomon concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*).

ALJ Solomon summarized the mental health evidence in the record. (R. 675-78). He stated that Plaintiff reported significant depression and anxiety after his wife's death, and he sought therapy and medication management related to those issues. (R. 675). The ALJ also noted that although Plaintiff experienced an exacerbation of psychiatric symptoms where he complained of auditory hallucinations and exhibited poor cognition requiring a two-day hospital stay, the treatment records indicate that his "mental conditions were stable secondary to conservative management." (*Id.*). In addition, the record generally reflects normal perception, behavior, thought process, and speech without concentration deficits. (*Id.*).

ALJ Solomon also discussed the findings of Dr. Murphy's December 2020 examination of Plaintiff. (R. 676). He noted that Dr. Murphy concluded that Plaintiff had fair insight and judgment even though he exhibited impaired attention, concentration and memory skills, and borderline-to-below average cognitive functioning. (*Id.*). ALJ Solomon also stated that while Dr. Murphy found that Plaintiff had a "marked restriction in the ability to understand, remember, and

apply complex instructions," Dr. Murphy also concluded that Plaintiff "only [had a] mild restriction with regard to interacting with others and sustaining an ordinary routine." (*Id.*). ALJ Solomon pointed out that Dr. Bhutwala and Dr. Fassler, who reviewed the Plaintiff's medical file in December 2020 and March 2021 respectively, "did not identify any marked work-related mental limitations." (*Id.*). The ALJ noted that Dr. Bhutwala and Dr. Fassler both "concluded that [Plaintiff] remained able to perform the basic mental demands of unskilled work." (*Id.*).

ALJ Solomon found that Dr. Murphy's opinion was only partially persuasive because her opinion "is not entirely consistent with the record as a whole which documents normal cognition, normal memory, average intelligence, and good insight in judgment." (*Id.*). The ALJ also concluded that "the treatment records note generally normal insight and judgment, all of which support the ability to make simple-work related decisions," and the record does not document any limits in memory, indicates average intelligence, and "no mental status examinations document limits in attention or concentration." (R. 676-77). ALJ Solomon opined that while Plaintiff does have moderate to marked limitations following complex instructions because of his education level, he does not have moderate limitations following simple instructions. (R. 677). The ALJ further afforded Dr. Murphy's opinion that Plaintiff had "marked inability to concentrate and sustain pace" little persuasiveness because she only performed a "one-time exam with a presentation that is not consistent with the treatment records." (*Id.*).

ALJ Solomon also discussed the findings of Dr. Bhutwala and Dr. Fassler. Specifically, the ALJ noted that Dr. Bhutwala opined that Plaintiff exhibited only mild limitations under all paragraph B criteria, except that he exhibited moderate limits "for maintaining concentration, persistence or [pace]," and that Dr. Bhutwala ultimately found that Plaintiff had the ability to perform the four basic mental demands of unskilled work. (*Id.*). ALJ Solomon further noted that

Dr. Fassler found that Plaintiff exhibited moderate limitations for "understanding, remembering or applying instruction as well and likewise concluded that the claimant can perform the basic mental demands of unskilled work." (*Id.*). Moreover, ALJ Solomon commented that "[t]o the extent that Dr. Bhutwala found mild limits in [understanding, remembering or applying instruction], whereas Dr. Fassler found moderate limits, the bottom-line opinion is the same, [which is] that [Plaintiff] can perform unskilled work." (*Id.*). ALJ Solomon also considered Dr. Murphy's opinion alongside Drs. Bhutwala and Fassler's opinions, noting "that all [three] doctors opined that the [Plaintiff] had no more than mild limits interacting with others," which ALJ Solomon found persuasive. (*Id.*). In sum, ALJ Solomon found that Drs. Bhutwala and Fassler's opinions were "consistent with each other, and supportable by and consistent with the treatment records." (*Id.*).

In conclusion, ALJ Solomon held that given Plaintiff's "acknowledged ability to attend to his personal care, travel independently, prepare simple meals, and shop in stores, it is evident that he is able to perform at least simple tasks and interact with others to a certain degree." (R. 678). Overall, ALJ Solomon found that "restricting [Plaintiff] to remembering, understanding, and carrying out instructions required for SVP level 1 and 2 jobs; [and] making simple work-related decision[s,] which may be required for SVP level 1 and 2 jobs; and maintaining attention/concentration for routine, repetitive, rote work adequately addresses [Plaintiff's] cognitive deficits." (*Id.*).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.*). At step five, considering Plaintiff's age, which qualified him as a younger individual, his limited education, the transferability of job skills, which was not an issue because Plaintiff did not have past relevant work, and RFC, the ALJ found that "there are jobs that exist in significant numbers in

the national economy that [Plaintiff] can perform." (*Id.*). Thus, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since August 12, 2020." (R. 680).

## II. DISCUSSION

Plaintiff argues that ALJ Solomon's decision should be reversed and remanded solely for the calculation of benefits, or alternatively, for further administrative proceedings. (Pl. Br. at 20). He contends that the ALJ failed to properly (1) evaluate the medical opinion evidence; and (2) evaluate Plaintiff's subjective statements. (*Id.* at 10-20). The Commissioner maintains that (1) the ALJ's decision is supported by substantial evidence; and (2) the ALJ "properly assessed the medical opinion evidence and Plaintiff's subjective complaints of disabling limitations." (Comm'r Br. at 6).

### A. Legal Standards

A claimant is disabled if he or she "is unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (*per curiam*) (quoting 42 U.S.C. § 423(d)(1)(A)). The Social Security Administration ("Administration") has enacted a five-step sequential analysis to determine if a claimant is eligible for benefits based on a disability:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or his past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the

> claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). The claimant has the general burden of proving that he or she is statutorily disabled "and bears the burden of proving his or her case at steps one through four." *Cichocki*, 729 F.3d at 176 (quoting *Burgess*, 537 F.3d at 128). At step five, the burden then shifts "to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (*per curiam*).

When reviewing an appeal from a denial of SSI or disability benefits, the Court's review is "limited to determining whether the [Administration's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 42 U.S.C. § 405(g). Substantial evidence means "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Put another way, a conclusion must be buttressed by "more than a mere scintilla" of record evidence. *Id.* (quoting *Consol. Edison*, 305 U.S. at 229). The substantial evidence standard is "very deferential" to the ALJ. *Brault*, 683 F.3d at 448. The Court does not substitute its judgment for the agency's "or 'determine *de novo* whether [the claimant] is disabled.'" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (alteration in original) (quoting *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)).

However, where the proper legal standards have not been applied and "might have affected the disposition of the case, [the] court cannot fulfill its statutory and constitutional duty

to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Therefore, "[f]ailure to apply the correct legal standards is grounds for reversal." *Id.*

On January 18, 2017, the Administration considerably revised its regulations for evaluating medical evidence. The rules went into effect on March 27, 2017, and therefore, apply to the instant case. Under the new regulations, the treating physician rule no longer applies. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Consequently, no special deference is given to the treating physician's opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, "[the Commissioner] will articulate in [his] determination or decision how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The updated regulations also define a "medical opinion" as "a statement from a medical source about what [the claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling or other physical functions ...." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Thus, a medical opinion must discuss both a claimant's limitations and "what [the claimant] is still capable of doing" despite those limitations. *Michael H. v. Saul*, 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021). Relatedly, conclusory statements by a claimant's provider concerning issues reserved to the Commissioner – for instance, whether the claimant is disabled under the SSA – are "inherently neither valuable nor persuasive" and will not be analyzed by the ALJ. 20 C.F.R. §§ 404.1520b(c), 416.920b(c).

**B. The ALJ's Duty to Develop the Record**

As a threshold matter, the Court must be satisfied that the record is fully developed before determining whether the Commissioner's decision is supported by substantial evidence. *See Smoker v. Saul*, 19-CV-1539 (AT)(JLC), 2020 WL 2212404, at *9 (S.D.N.Y. May 7, 2020) ("Whether the ALJ has satisfied this duty to develop the record is a threshold question."). "[I]n light of the 'essentially non-adversarial nature of a benefits proceeding[,]'" "[a]n ALJ, unlike a judge at trial, has an affirmative duty to develop the record." *Vega v. Astrue*, No. 08 Civ. 1525 (LAP)(GWG), 2010 WL 2365851, at *2 (S.D.N.Y. June 10, 2010) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). "This duty is present even when a claimant is represented by counsel[.]" *Atkinson v. Barnhart*, 87 F. App'x 766, 768 (2d Cir. 2004) (summary order). "Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence" is appropriate. *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d. Cir. 1996)); *see also Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order).

Here, the Court finds no obvious gaps in the record. Although Plaintiff claims that none of his therapy records prior to August 2020 appear in the certified record, (Pl. Br. at 5), a review of the certified record shows that there are psychotherapy session notes from 2019, (*see, e.g.*, R. 1378, 1396, 1452). In addition, there are over 1,500 pages of records dating from 2019 through 2025, including medical and mental health treatment records, medical opinions from the consultative examiner, records from the disability examiner, prior administrative decisions, and

the hearing records. *See supra* Section I. Moreover, during the July 2024 hearing, counsel for Plaintiff and ALJ Solomon confirmed and agreed that the record was complete for purposes of making a disability determination. (R. 698-99); *see David B.C. v. Comm'r of Soc. Sec.*, 1:20-CV-01136 (FJS/TWD), 2021 WL 5769567, at *7 (N.D.N.Y. Dec. 6, 2021) (ALJ fulfilled duty to develop the record where "Plaintiff did not object to the contents of the record or identify any gaps that need to be filled.").

It is clear from a review of the record that it is complete. *See, e.g.*, *Mangual v. Comm'r of Soc. Sec.*, 600 F. Supp. 3d 313, 326 (S.D.N.Y. 2022) ("Because nothing [plaintiff] has argued suggests that this constitutes a 'glaring gap' in the evidence, and because [plaintiff]'s counsel represented to the ALJ that the record was complete, we discern no error in the ALJ's development of the record."); *Lefever v. Astrue*, No. 5:07-CV-622 (NAM/DEP), 2010 WL 3909487, at *7-8 (N.D.N.Y. Sept. 30, 2010) (declining to order further opinion where "[p]laintiff ha[d] not alleged that there [we]re gaps in [her] medical history and . . . [t]he evidence received from the treating physicians was adequate and allowed the ALJ to make a determination as to disability"), *aff'd*, 443 F. App'x 608 (2d Cir. 2011).

Accordingly, the Court recommends finding that ALJ Solomon fulfilled his duty to develop the record.

**C. The ALJ's Residual Functional Capacity Determination**

The ALJ determined that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), subject to certain limitations. (R. 672). Although the ALJ acknowledged that Plaintiff's ability to perform all or substantially all of the requirements of light work was "impeded by additional limitations,"[7] he found that Plaintiff could "remember, understand, and

[7] These included moderate limitations with respect to interacting with others, difficulty handling stress, and difficulty adapting to changes in work routines. (R. 678).

carry out simple instructions, use judgment to make simple work-related decisions, adapt to routine and occasional changes in the workplace, have occasional contact with supervisors and coworkers, and . . . have no contact with the general public." (*Id.*). Based on the VE's testimony, the ALJ concluded that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and RFC could perform. (R. 678). Specifically, the VE identified occupations such as laundry attendant, mail sorter, order caller, document preparer, addresser, and assembly line worker. (R. 679-80).

The Court "conduct[s] a plenary review of the administrative record to determine whether, considering the record as a whole, the Commissioner's decision is supported by substantial evidence." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002) (citation omitted). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." *Id.* The ALJ must weigh all the available evidence to make an RFC determination that is consistent with the record. *See Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 225 (E.D.N.Y. 2021) (citing *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)).

"The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his [or her] impairments." *Selian*, 708 F.3d at 418 (citing 20 C.F.R. § 404.1545). "The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 640 (S.D.N.Y. 2019) (citing 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)); *see also Weather v. Astrue*, 32 F.

Supp. 3d 363, 376 (N.D.N.Y. 2012) (When determining the RFC, the ALJ considers "a claimant's physical abilities, mental abilities, [and] symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis.") (citing 20 C.F.R. § 404.1545(a)). "[T]he RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence." *Glessing v. Comm'r of Soc. Sec.*, No. 13 Civ. 1254 (BMC), 2014 WL 1599944, at *8 (E.D.N.Y. Apr. 21, 2014) (quoting *Wichelns v. Comm'r of Soc. Sec.*, No. 5:12-CV-1595 (NAM)(ATB), 2014 WL 1311564, at *6 (N.D.N.Y. Mar. 31, 2014)) (internal quotations omitted). The RFC determination is reserved to the Commissioner. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2d Cir. 2017) (summary order). When the RFC is supported by substantial evidence in the record, the Court will uphold it. *Zacharopoulos*, 516 F. Supp. 3d at 226 (citing *Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015)).

The Commissioner may also consider a claimant's daily activities in the RFC analysis. *See Perez-Rodriguez v. Astrue*, No. 10 Civ. 9346 (NRB), 2011 WL 6413763, at *5 (S.D.N.Y. Dec. 21, 2011); *see also* 20 C.F.R. § 404.1512(b). Courts in the Second Circuit have held that an individual's ability to complete basic daily activities "does not, in itself, contradict a claim of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Brown v. Comm'r of Soc. Sec.*, No. 06-CV-3174 (ENV)(MDG), 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)). Nevertheless, the regulations state that the Commissioner will consider Plaintiff's daily activities as one factor in determining the severity of Plaintiff's impairments. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

**1. RFC Determination**

Plaintiff argues that ALJ Solomon erred in assessing his RFC because he improperly evaluated the opinion evidence. (Pl. Br. at 10-15). Specifically, Plaintiff contends that the ALJ failed to adequately consider the consistency of Dr. Murphy's opinion with the remainder of the record, improperly relied on the prior administrative medical findings of Drs. Bhutwala and Fassler despite their review of an allegedly incomplete record, and impermissibly substituted his own judgment for that of trained mental health professionals. (Pl. Br. at 11-13; Pl. Reply at 3). The Court disagrees.

Here, the ALJ conducted a thorough review of the medical and non-medical evidence in assessing Plaintiff's RFC. The ALJ's determination that Plaintiff can perform light work reflects that he considered Plaintiff's testimony from both administrative hearings, (R. 673), his reported daily activities, *(id.*), the entire treatment record, (R. 672-78), the consultative examination performed by Dr. Murphy, (R. 676), and the opinions of the state agency psychological consultants, (*id.*).

With respect to Plaintiff's testimony, the ALJ acknowledged Plaintiff's allegations that he spent much of the day lying down, required assistance shopping, experienced auditory hallucinations directing him to harm himself, disliked being around others, and had difficulty concentrating. (R. 673). At the same time, however, the ALJ noted that Plaintiff also testified that he was capable of caring for himself on occasion and independently traveled by train to the administrative hearing. (*Id.*). The ALJ further observed that Plaintiff's reported daily activities demonstrated that he could attend to his personal care, prepare simple meals, wash dishes, shop in stores, and travel independently. (*Id.*; *see also* R. 37-44, 262-64, 278-79, 450, 463, 702). Thus, the ALJ properly considered these activities together with the medical evidence in

evaluating the severity of Plaintiff's alleged mental impairments.

ALJ Solomon also properly relied on VE Halls' testimony that an individual with Plaintiff's age, education, work experience, and residual functional capacity could work as a laundry attendant, mail sorter, order caller, document preparer, addresser, and an assembly line worker. (R. 679-80). Relying on the foregoing, ALJ Solomon reasonably determined that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 680); *see also Wayne J., v. Comm'r of Soc. Sec.*, 25-CV-1832 (HJR), 2026 WL 710378, at *7 (S.D.N.Y. Mar. 13, 2026) (noting that "[t]he ALJ reasonably relied on the vocational expert's testimony in the context of Plaintiff's age, education, work experience, and RFC, to reach the conclusion, supported by substantial evidence, that Plaintiff could perform other occupations with jobs existing in significant numbers in the national economy.").

The ALJ similarly discussed Plaintiff's mental health treatment records. Although the record reflected episodes of depressed mood, the ALJ noted that Plaintiff's mental status examinations generally documented normal perception, appropriate behavior, coherent thought processes, normal speech, intact memory, and no significant deficits in attention or concentration. (R. 675; *see also* R. 553-54, 599, 609, 612, 618, 630, 632, 649). These findings provided substantial support for the ALJ's conclusion that Plaintiff retained the capacity to perform simple, routine work with appropriate social limitations.

Plaintiff also argues that the ALJ failed to properly evaluate the supportability and consistency of Dr. Murphy's consultative opinion. (Pl. Br. at 10-15).[8] The record does not

[8] The supportability analysis does not require an ALJ to specify each individual document he considered, rather, more generally, it requires an ALJ to "conduct an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion." *Ayala v. Kijakazi*, 620 F. Supp. 3d 6, 30

support this contention. Indeed, the Appeals Council specifically directed the ALJ on remand to address the supportability of Dr. Murphy's opinion, and the decision demonstrates that the ALJ complied with that directive. (R. 666, 752-53).

The ALJ acknowledged that Dr. Murphy supported her opinion by citing Plaintiff's deficits in attention, concentration, and memory. (R. 676). Nevertheless, the ALJ reasonably concluded that Dr. Murphy's opinion was only partially persuasive because it was based upon a one-time consultative examination and was not entirely consistent with the record as a whole. (R.676-77). Specifically, the ALJ explained that Dr. Murphy's assessment of marked limitations conflicted with treatment records documenting normal cognition, intact memory, average intelligence, and fair insight and judgment. (R. 676, *see also* R. 1006, 1062, 1067). The ALJ also observed that Dr. Murphy's report was inconsistent with Plaintiff's own statements regarding his ability to use public transportation. (R. 676; *see also* R. 264, 278, 702).

The ALJ further recognized that Dr. Murphy assessed marked limitations in Plaintiff's ability to understand, remember, and apply complex instructions and maintain concentration and pace, while only identifying moderate limitations in understanding and applying simple instructions, making work-related decisions, regulating emotions, and controlling behavior. (R. 676). At the same time, however, Dr. Murphy found only mild limitations in Plaintiff's ability to interact with others and sustain an ordinary routine, and reported that Plaintiff demonstrated fair insight and judgment during the examination. (*Id.*). The ALJ expressly considered these findings in the context of the entire record in determining that Dr. Murphy's opinion was only partially persuasive.

(S.D.N.Y. 2022) (internal quotation omitted). Regarding consistency, "the regulations simply require that an ALJ assess each medical opinion's consistency with the other evidence in the record." *Young v. Kijakazi*, No. 20-cv-03604 (SDA), 2021 WL 4148733, at *10 (S.D.N.Y. Sept. 13, 2021).

The ALJ also reasonably contrasted Dr. Murphy's opinion with the opinions of Drs. Bhutwala and Fassler, both of whom concluded that Plaintiff retained the ability to perform the basic mental demands of unskilled work and did not identify any marked work-related mental impairments. (R. 677; *see also* R. 104-08, 128-32). The ALJ explained that those opinions were more consistent with the longitudinal treatment record, including subsequent mental status examinations documenting appropriate mood and affect, intact memory and concentration, and Plaintiff's repeated denial of significant depressive symptoms or functional limitations. (R. 677; s*ee also* R. 996, 1273). Based upon this evidence, the ALJ concluded that Dr. Murphy's assessment of marked limitations was inconsistent with the record as a whole.

Plaintiff also argues that the ALJ improperly relied upon the prior administrative medical findings of Drs. Bhutwala and Fassler because they allegedly reviewed an incomplete record. (Pl. Br. at 13-14). "[N]othing in the regulations requires that the medical sources have access to the entire scope of treatment records in order for their opinions to constitute substantial evidence." *Veronica L. v. Comm'r of Soc. Sec.*, 24-CV-1079 (KHP), 2025 WL 720865, at *6 (S.D.N.Y. Mar. 6, 2025); *see also Ana R. v. Comm'r of Soc. Sec*., 24-CV-08802 (ER)(SN), 2026 WL 210411, at *7 (S.D.N.Y. Jan. 6, 2026) ("Courts have repeatedly rejected the notion that a medical examiner is required to review a claimant's entire medical record before an ALJ can rely on their opinion."), *report and recommendation adopted*, 2026 WL 209808 (S.D.N.Y. Jan. 27, 2026). Here, although Plaintiff characterizes the record reviewed by Drs. Bhutwala and Fassler as "empty," the administrative record demonstrates otherwise. At the time the consultants rendered their opinions, the file included mental health treatment records spanning from approximately October 2020 through March 2021. (*See* R. 91-108, 117-32). In fact, Dr. Bhutwala and Dr. Fassler were aware of Plaintiff's one-week hospitalization in 2018 due to his depression when

making their determinations. (R. 107, 132). Moreover, the ALJ did not adopt their prior administrative medical findings in isolation. Rather, he evaluated those opinions in conjunction with the entire record, including mental health treatment notes generated after the consultants issued their assessments. (R. 676-78). Indeed, ALJ Solomon cited medical evidence in the record dated *after* Drs. Bhutwala and Fassler's assessments that failed to show any significant deterioration in Plaintiff's condition. (R. 677); *see also Emma G. v. Comm'r of Soc. Sec.*, 20-CV-613S, 2021 WL 2410538, at *6 (W.D.N.Y. June 14, 2021) (noting that "there is no indication of an incomplete record as there was no significant deterioration in Plaintiff's condition" after the medical opinion in question was issued). Thus, the ALJ properly found the consultants' opinions persuasive because they were supported by and consistent with the medical evidence as a whole, Plaintiff's testimony, and portions of Dr. Murphy's findings. (*Id.*).

Further, courts in this district have held that medical consultants are not required to personally examine a claimant for their opinions to constitute substantial evidence. *See, e.g.*, *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) ("[T]he opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record"); *accord Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (ALJ did not err by affording great weight to consultative examiner's opinion because it was consistent with record evidence) (summary order). In addition, the ALJ did not err by finding a one-time psychological examination only partially persuasive. *See Foster v. O'Malley*, 7:22-cv-10145 (KMK)(VR), 2024 WL 3813805, at *3 (S.D.N.Y. July 31, 2024) (noting that "the ALJ did not err by finding that [the psychological consultative examiner's] opinion, which was based on a one-time examination, was not persuasive"), *report and recommendation adopted*, 2024 WL 4117162 (S.D.N.Y. Sept. 9, 2024); *see also Gibbs v. Acting Comm'r of Soc. Sec.*, No. 20 Civ. 6225

(NSR)(JCM), 2023 WL 21867, at *7 (S.D.N.Y. Jan. 3, 2023) (noting "that the ALJ has the discretion to give [an examining consultant's] opinion partial weight based on the fact that [the consultant] only provided a one-time examination"). Thus, ALJ Solomon "properly considered and weighed [the opinion evidence] relating to Plaintiff's mental health limitations." *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp 3d. 389, 396 (W.D.N.Y. 2018); *see also Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Finally, Plaintiff contends that the ALJ improperly substituted his own judgment for that of trained mental health professionals by ignoring "the evidence supporting disability while relying on other normal findings in the record that are not determinative of disability." (Pl. Reply. at 5). However, Plaintiff identifies no material evidence that the ALJ ignored or failed to consider. Rather, Plaintiff's argument amounts to a disagreement with the ALJ's evaluation of conflicting evidence. Indeed, Plaintiff acknowledges that an ALJ may resolve issues as to credibility of testimony or to choose between properly submitted medial opinions. (*Id.* at 4). That is exactly what ALJ Solomon did here by evaluating Plaintiff's testimony, the opinions of various doctors, and other medical evidence. (R. 673-78).

It is the ALJ's role to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56. In sum, "[a]lthough it is true that an ALJ may not simply ignore evidence that does not support his decision," here, ALJ Solomon "set forth the basis for the different weights he accorded different evidence in the record [and] [t]hat evidence painted conflicting pictures of the extent of [Plaintiff's] physical and mental limitations, and the ALJ explicitly resolved those conflicts." *Klemons v. Kijakazi*, 626 F.

Supp. 3d 620, 633 (S.D.N.Y. 2022). In fact, "[a]n ALJ is free to, and often must, choose between properly submitted medical opinions in reaching his decision." *Id.* (internal quotations omitted). Therefore, contrary to Plaintiff's contentions, ALJ Solomon "did not 'cherry-pick' evidence from the record, and did not substitute his own view for that of medical professionals. Instead, [ALJ Solomon] reviewed the evidence and provided explanations for why he was accepting certain evidence and rejecting other evidence, including on the grounds that certain opinions were inconsistent with the evidence in the record and with Plaintiff's testimony." *Withus v. Saul*, 18-CV-10923 (VSB) (JLC), 2021 WL 2012270, at *12 (S.D.N.Y. May 19, 2021).

Accordingly, the Court respectfully recommends finding that the ALJ's RFC determination is supported by substantial evidence.

**2. ALJ's Evaluation of Plaintiff's Subjective Statements**

Plaintiff also contends that the ALJ's evaluation of his subjective statements is not supported by substantial evidence. (Pl. Br. at 15-19). Specifically, Plaintiff argues that the ALJ improperly relied on selected normal mental status examinations while disregarding evidence supporting a finding of disabling mental impairments, including portions of Dr. Murphy's consultative opinion. (*Id.* at 16). The Commissioner responds that ALJ Solomon properly evaluated Plaintiff's subjective complaints by considering the entire record, including Plaintiff's testimony, his reported daily activities, treatment reports, and the effectiveness of his treatment. (Comm'r Br. at 17-20). The Court agrees with the Commissioner.

"It is the function of the Commissioner . . . to appraise the credibility of witnesses, including the claimant." *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 759 (S.D.N.Y. 2018) (internal quotations and citations omitted). In fact, an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the

credibility of the claimant's testimony in light of the other evidence in the record." *Id.* at 763 (internal quotations and citations omitted). The regulations require the Commissioner to consider all of the available evidence, including the claimant's "medical history, the medical signs and laboratory findings, and statements about how [his or her] symptoms affect [him or her]." 20 C.F.R. § 404.1529(a), (c). Moreover, an ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Martes.* at 763 (internal quotations and citations omitted). However, the Commissioner "will not reject [a claimant's] statements about the intensity and persistence of [his or her] pain or other symptoms or about the effect [his or her] symptoms have on [his or her] ability to work solely because the available objective medical evidence does not substantiate [his or her] statements." 20 C.F.R. § 404.1529(c)(2). In addition, an ALJ is not required to explicitly discuss every piece of evidence, so long as the Court is able to glean the rationale underlying the decision. *Morales v. Berryhill*, 484 F. Supp. 3d 130, 151 (S.D.N.Y. 2020).

The Court finds that the ALJ properly evaluated Plaintiff's subjective complaints in accordance with these standards. The ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (R. 673). The ALJ's decision demonstrates that he reached this conclusion after considering Plaintiff's testimony, his reported daily activities, the treatment record, and the opinion evidence. (*Id.*).

The ALJ determined that Plaintiff's reported activities were inconsistent with the degree of limitation alleged. Although Plaintiff testified that he experienced significant difficulties with concentration, memory, understanding, and interacting with others, (R. 705-06), the ALJ noted that Plaintiff also acknowledged that he could attend to his personal care, prepare simple meals, wash dishes, shop in stores, and travel independently, (R. 673; *see also* R. 262-64, 278-79, 450, 463, 676, 700-704). The ALJ appropriately considered these activities in evaluating the consistency of Plaintiff's subjective allegations with the record as a whole.

The ALJ also concluded that Plaintiff's allegations of disabling social limitations were not fully supported by the medical evidence. Although Plaintiff reported social withdrawal, difficulty getting along with others, and a fear of crowds, the ALJ observed that mental status examinations generally documented appropriate behavior and did not reflect behavioral or relational abnormalities beyond episodes of depressed mood or flat affect. (R. 671). The ALJ further noted that Plaintiff's own statements were inconsistent with his allegations. For example, during a psychotherapy session in May 2019, Plaintiff reported that he was seeking employment and may start working overnight in the food industry. (R. 1452). Similarly, in October 2021, Plaintiff reported that he had a job orientation to begin working, and had an appointment to view an apartment, and was excited about the possibility of living in his own place. (R. 1219-20). In fact, in January 2024, Plaintiff testified that he took the train to the hearing by himself, can sometimes attend to his personal needs, and that he had been living alone in an apartment for six months. (R. 701-02). Thus, the ALJ reasonably considered these statements in assessing the extent of Plaintiff's alleged social and functional limitations. (*See* R. 673-77).

Substantial evidence also supports the ALJ's evaluation of Plaintiff's alleged cognitive limitations. Although Dr. Murphy observed borderline-to-below-average cognitive functioning

with impaired attention, concentration, and memory during the consultative examination, the ALJ noted that the treatment records generally documented normal cognition, intact memory, and appropriate judgment. (R. 671; *see, e.g.,* R. 1006, 1062, 1067). The ALJ also observed that, despite Plaintiff's assertion that he avoided public transportation, Plaintiff elsewhere reported traveling independently, shopping in stores, and getting along with authority figures. (R. 671, 677). In addition, ALJ Solomon considered Dr. Murphy's finding that Plaintiff had only mild limitations in interacting appropriately with supervisors, coworkers, and the public. (R. 462, 678). Viewed together, this evidence reasonably supported the ALJ's determination that Plaintiff had no more than moderate limitations in these areas of mental functioning.

The ALJ also adequately explained why he found Plaintiff's allegations regarding auditory hallucinations less persuasive. (R. 678). Although Plaintiff testified that he heard voices telling him to kill himself, the ALJ noted that treatment records for well over a year or more documented Plaintiff's repeated denial of hallucinations. (*Id.*; *see, e.g.*, R. 131-32, 599, 602, 610, 621, 632, 635, 996, 1006, 1041, 1044, 1062). For instance, during psychotherapy sessions in the year preceding the January 2024 hearing, Plaintiff repeatedly denied experiencing auditory or visual hallucinations, (*see, e.g*., R. 1006, 1041), and his therapist specifically noted he exhibited "no mental instability" in August of 2023, (*see* R. 972).

Moreover, the ALJ noted "[t]he record documents no more than slight difficulties in any area of functioning," (R. 677), and relied, in part, on treatment reports from January 2023 stating that Plaintiff's "estimated global assessment of functioning appeared reasonably good with only short lived and expectable reactions to everyday stressful events . . . [and he] shows only slight difficulty in relational and/or work/school functioning," (R. 1035-36). The ALJ was entitled to consider these inconsistencies when evaluating the reliability of Plaintiff's subjective complaints.

Ultimately, Plaintiff's argument asks the Court to reweigh the evidence and reach a different conclusion regarding the severity of his symptoms. That is not the Court's role. The decision reflects that ALJ Solomon considered Plaintiff's subjective complaints, compared those allegations against the objective medical evidence and other evidence in the record, identified specific inconsistencies, and explained why he found Plaintiff's statements only partially consistent with the record. (R. 663-85). The ALJ, therefore, articulated specific reasons, supported by substantial evidence, for discounting the alleged severity of Plaintiff's symptoms. *See Urena v. Comm'r of Soc. Sec.*, 379 F. Supp. 3d 271, 287-88 (S.D.N.Y. 2019); *Hutchings v. Berryhill*, No. 18-CV-1921 (PAE) (KHP), 2019 WL 5722478, at *14 (S.D.N.Y. June 28, 2019), *report and recommendation adopted*, 2019 WL 5722009 (S.D.N.Y. July 16, 2019) ("[I]t is clear to this Court that the ALJ did not ignore Plaintiff's subjective complaints when formulating his opinion, but merely discounted their veracity in light of medical and other evidence in the record."). "In sum, the ALJ gave reasons for his decision not to credit [Plaintiff's] subjective complaints, and to the extent not explicitly stated by the ALJ, the record evidence permits us to glean the rationale of the ALJ's decision." *Klemons*, 626 F. Supp. 3d at 635 (internal quotations and citation omitted).

Accordingly, the Court respectfully recommends finding that the ALJ properly evaluated Plaintiff's subjective statements.

## III. CONCLUSION

For the foregoing reasons, the Court concludes and respectfully recommends denying Plaintiff's Motion.

## IV. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from receipt of this Report and Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for computing time). If copies of this Report and Recommendation are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written objections. *See* Fed R. Civ. P. 6(a). Objections and responses to objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned. Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72(b); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated: August 6, 2026
White Plains, New York

**RESPECTFULLY SUBMITTED:**

Judith C. McCarthy

JUDITH C. McCARTHY
United States Magistrate Judge